UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONICA L. WELSH, | No. CV 14-1730-AGR |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Commissioner of Social Security | |
| Defendant. | |

Plaintiff Monica L. Welsh filed this action on March 14, 2014. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 9, 15.) On March 2, 2015, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.

## PROCEDURAL BACKGROUND

On October 5, 2010, Welsh filed an application for supplemental security income.[1] Administrative Record ("AR") 14, 142-47. On December 14, 2010, Welsh filed an application for disability insurance benefits. AR 14, 164-70. In both applications, Welsh alleged an onset date of October 23, 1997. AR 14, 142, 164. The applications were denied initially and on reconsideration. AR 14, 61-62. Welsh requested a hearing before an ALJ. AR 77. On July 18, 2013, the ALJ conducted a hearing at which Welsh, a medical expert, and a vocational expert ("VE") testified.[2] AR 33-60. On August 9, 2013, the ALJ issued a decision denying benefits. AR 14-28. On January 2, 2014, the Appeals Council denied the request for review. AR 1-6. This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines

---

[1] Welsh previously filed an application for disability insurance benefits on May 18, 1999, alleging an onset date of October 23, 1997. JS 4. The application was denied, an Administrative Law Judge ("ALJ") issued a decision denying benefits, and the court affirmed the decision of the Commissioner. *Id.*

[2] Welsh filed an application for disabled widow's benefits on June 14, 2013, again alleging an October 23, 1997 onset date. AR 14, 197-98. The 2013 application was decided with the above-referenced 2010 applications. AR 14.

2

the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

### III.
### DISCUSSION

#### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

#### B. The ALJ's Findings

The ALJ found that Welsh met the insured status requirements through December 31, 2002. AR 17. Regarding her application for disabled widow's benefits, the prescribed period ended on September 15, 2014. *Id.* Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that Welsh has the severe impairments of fibromyalgia and macular degeneration/myopic degeneration with associated vision loss (worse in right eye). AR 17. Her impairments do not meet or equal a listing. AR 23. Welsh has the residual functional capacity ("RFC") to perform light work not involving lifting/carrying in excess of 10-20 pounds; sitting, standing and/or walking in excess of 6 hours per 8-hour workday; crawling or climbing of ramps/stairs; performing

---

[3] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

any climbing of ladders/ropes/scaffolds more than frequently; working at unprotected heights or around fire, water, moving machinery, or temperature extremes; or performing any work activities requiring constant depth perception vision. *Id.* Welsh has no past relevant work, but there are jobs that exist in significant numbers in the national economy that she can perform. AR 26.

### C. Nurse Practitioner's Opinion

Welsh argues that the Fibromyalgia Residual Functional Capacity Questionnaire ("Fibromyalgia assessment") by Ruth Pinter, a nurse practitioner, constitutes a report from a treating physician and should have been given more weight.

In the Fibromyalgia assessment dated September 2012, Ms. Pinter opined that Welsh could sit for four hours and stand/walk for 4 hours in an 8-hour workday, and could lift less than 10 pounds occasionally. She would likely need to take a break every 1-2 hours and should avoid all environmental irritants or temperature extremes. AR 18, 390-95. Welsh would likely be absent from work more than three times a month as a result of her impairments or treatment. AR 394.

The ALJ gave "no evidentiary weight" to the Fibromyalgia assessment and noted that nurse practitioners are not considered an "acceptable medical source." AR 25. A nurse practitioner does not qualify as an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a) (listing "acceptable medical sources"), 416.913(a) (same), 404.1513(d) (nurse practitioners are "other sources"), 416.913(d) (same); Social Security Ruling ("SSR") 06-03p[4] (nurse practitioners are not acceptable medical sources). Nevertheless, such evidence may be used "to show the severity of your impairment(s) and how it affects your ability to work." 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ need only provide "germane" reasons for rejecting Ms. Pinter's opinion. *See Molina v.*

---

[4] Social Security rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

*Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The ALJ may discount testimony from these other sources if the ALJ gives reasons germane to each witness for doing so.") (citation and internal quotation marks omitted).

A nurse practitioner's opinion may be considered an opinion of an acceptable medical source when the nurse practitioner works under a physician's supervision and consults with the physician regarding the claimant's treatment, and acts as an agent of the doctor. *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *see also Taylor v. Comm'r*, 659 F.3d 1228, 1234 (9th Cir. 2011).[5] Welsh argues that Ms. Pinter "work[ed] in a clinic with three medical doctors," and she thought Ms. Pinter was a doctor. AR 47-49. The record contains no evidence that a doctor closely supervised Ms. Pinter or that she consulted with a doctor about Welsh's treatment. Although the Fibromyalgia assessment contains signature lines for doctors, the signature lines are blank. AR 395. The record contains no treatment records from Pinter or any doctor at the clinic.

The ALJ rejected Ms. Pinter's opinion because the record did not contain Ms. Pinter's treatment records and her functional assessment was "wholly inconsistent with the other medical evidence of record and appears to reflect little more than [Welsh's] subjective allegations."[6] AR 25.

On May 25, 2011, Dr. Lim, an examining physician, found that Welsh displayed multiple tender points in her back suggestive of fibromyalgia, but retained normal

---

[5] In *Molina*, the Ninth Circuit noted that the regulatory section relied on in *Gomez* has since been repealed, but did not address *Gomez*'s "continued vitality" because the physician's assistant in that case acted alone. 674 F.3d at 1112 n.3.

[6] The ALJ noted that the record contains no evidence pre-dating 2003 (despite a 1997 onset date) and limited medical evidence in 2010-2011. AR 17, 24. The records from 2003-2011 document vision-related treatment for myopic degeneration. AR 246-323. Welsh argues that the ALJ did not consider the record of "over 700 pages" in her previous district court case, CV 09-6509 AGR. However, Welsh's attorney did not argue to the ALJ that the record was incomplete. AR 35 (stating no objection to the exhibits). Nor did counsel ask the ALJ to retrieve the record in the previous district court case. Counsel stated "this is a new application on an old case." AR 36.

ranges of motion in her back and extremities, with no neurological deficits of motor strength, sensation or reflexes. She had normal muscle tone without atrophy. AR 17-18, 325-27. Dr. Lim opined that Welsh could lift and/or carry 20 pounds occasionally and 10 pounds frequently; could stand, walk or sit for 6 hours in an 8-hour workday; should avoid unprotected heights; and had visual limitations in the right eye. AR 18, 327. In June 2011, a State Agency physician assessed Welsh with the same functional limitations but added restrictions against performing more than occasional climbing activities, performing work tasks involving fine visual skills, or working around hazardous conditions. AR 18, 329-33.

On October 5, 2011, Welsh went to the emergency room with what she called a "seizure." AR 376. The neurology team found that Welsh's presentation was inconsistent with seizure or neurologic compromise, and diagnosed tremor and anxiety.[7] AR 377, 383. On December 14, 2011, Dr. Hsieh noted 11/18 tender points on fibromyalgia examination and referred her to a fibromyalgia rehabilitation program. AR 372. On February 8, 2012, Dr. Hsieh indicated that Welsh had been seen by rheumatology, which recommended Tramadol and hydrotherapy to help with fibromyalgia pains. AR 368-69. Welsh reported that Tramadol made her pain worse and she stopped taking it. AR 368. She was referred for rehabilitation/OT, which she planned to start later that month. She reported starting psychology counseling sessions. A neurology appointment was scheduled in April 2012. *Id.* A July 2013 report from a "colon-hydro therapist" indicated Welsh had undergone hydro-colon therapy since November 2012 to improve her digestive system. AR 19, 419. Welsh was on a nutritionally balanced diet. AR 19, 419.

On February 26, 2013, Dr. Benrazavi, a consultative examiner, tested Welsh for fibromyalgia trigger points. Welsh had four cervical points and two trapezius points. Dr.

---

[7] Welsh said that when she was speaking to the bank about a foreclosure on her home, she dropped to the ground and had tremors throughout her body. AR 376.

6

Benrazavi stated that "[f]ibromyalgia was not my impression of [Welsh]."  AR 18-19, 407.  Dr. Benrazavi did not find evidence of chronic fatigue syndrome.[8]  AR 18-19, 407.  Motor strength was 5/5 in all extremities with no evidence of atrophy.  AR 406.  Dr. Benrazavi opined that Welsh could lift/carry up to 50 pounds occasionally and 20 pounds frequently.  AR 19, 413.  She could sit, stand, or walk for 6 hours; frequently reach, handle, finger, feel, push/pull; frequently operate foot controls; occasionally climb and stoop; frequently balance, kneel, crouch or crawl; and frequently tolerate hazards and environmental irritants.  AR 19, 416-17.

At the hearing, Dr. Alexander, a medical expert, diagnosed Welsh with right eye macular degeneration and fibromyalgia.  AR 19, 38.  He opined that Welsh could lift/carry up to 50 pounds occasionally and 20 pounds frequently.  She could sit, stand or walk for 6 hours out of an 8-hour workday.  She could not climb ropes, ladders or scaffolding.  She could frequently go up stairs, ramps, balance, bend, stoop, crouch, kneel and crawl.  She had difficulty with precise depth perception.  She could not work at unprotected heights, around heavy machinery with rapidly moving parts, around open flames or around open water.  AR 40.

The ALJ provided sufficient reasons for discounting Ms. Pinter's opinion.

### D. Credibility

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)

---

[8] Dr. Benrazavi stated that she usually sees lymphadenopathy on the anterior cervical chains but did not see that in Welsh.  AR 407.

(en banc)).  The ALJ found that Welsh's medically determinable impairments could reasonably be expected to produce symptoms.  AR 24.

"Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]'"  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).

In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation."  *Bunnell*, 947 F.2d at 346 (citing SSR 88-13) (quotation marks omitted).  The ALJ may consider:  (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Welsh testified that she cannot work because she has low energy and can "crash" at any moment.  On some mornings, she does not have the energy to get out of bed.  Simple tasks like having a bowel movement can "take me out."  AR 23, 45.  She has vision loss and problems with depth perception. She has pain throughout her body, and tingling through her hands and feet.  AR 23, 52.  She has trouble standing for long periods of time.  AR 23, 52.  She is nauseous because of the pain.  AR 52.  She has headaches and digestive problems.  AR 53.  She has multiple chemical sensitivities,

and "literally will collapse to the ground" if she gets near a diesel bus. AR 53. She has uncontrollable seizures. AR 24, 53. About three to four times a week, she cannot do anything because she is "wiped out." AR 54.

The ALJ found that Welsh's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent they were inconsistent with the RFC. AR 24. The ALJ relied on four reasons: (1) objective medical evidence did not support the degree of functional limitations alleged; (2) Welsh did not comply with treatment; (3) Welsh's activities of daily living and allegations were inconsistent; and (4) Welsh answered questions at the hearing alertly and appropriately. AR 24-25.

### 1. Objective Evidence

Welsh's main argument is that the ALJ erred in finding that the medical evidence does not support the degree of alleged functional limitation.

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). Regarding fibromyalgia, the ALJ noted that Welsh displayed some fibromyalgia tender points during Dr. Lim's examination that were suggestive of fibromyalgia, although Dr. Benrazavi did not agree with that diagnosis. AR 24, 327, 407. During both examinations, Welsh retained normal ranges of motion and neurological functioning, and did not require the use of assistive devices for ambulation. AR 24, 326-27, 406. Dr. Lim, Dr. Benrazavi and the State Agency medical consultant assessed Welsh as capable of performing at least a modified degree of light work activity. AR 24-25, 327, 330-33, 413. In December 2011, Welsh was referred for physical and hydrotherapy for fibromyalgia complaints, but there is no evidence that Welsh participated in such therapy. AR 25, 368-69, 371. As discussed above, the record does not contain treatment notes of Ms. Pinter. AR 25, 390-94.

Regarding chronic fatigue syndrome, the ALJ noted that apart from some generalized lumbar tenderness, the record lacked medical evidence supporting Welsh's allegations of severe chronic fatigue syndrome resulting in significant functional limitations and inability to sustain activity. AR 22. Welsh reported to Dr. Rathana-Nakintara that she had self-diagnosed her chronic fatigue syndrome. AR 336-37.

The ALJ noted that Welsh generally performed well at a psychiatric evaluation by Dr. Rathana-Nakintara in August 2011.[9] AR 22, 334-38. Welsh was a college graduate. AR 335; AR 45. Welsh was diagnosed with adjustment disorder and had no mental limitations to performing simple and/or complex tasks in a work-setting. AR 19, 337. Dr. Rathana-Nakintara found that Welsh seemed to be holding up well from a psychiatric standpoint. AR 338. Dr. Rathana-Nakintara indicated that Welsh had become upset when the doctor pointed out that her energetic, forceful and rather incessant description of her symptoms of chronic fatigue syndrome seemed to be opposite of her complaints of not having energy. AR 336.

Welsh argues that had the ALJ considered her "long history of records and treatment," the ALJ "would have perhaps understood [her] long tortuous path." JS 14-15. The ALJ properly considered the evidence in the record and was not notified of any deficiency in the record. Nor is there any indication that the prior records contained any different information for the relevant time period.

2. Non-compliance with Treatment

"[U]nexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" is a relevant factor in weighing a plaintiff's credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ noted that there was no evidence Welsh remained compliant with medications for fibromyalgia or that she participated in the recommended physical and hydrotherapy, apart from treatment with a colon-hydro therapist for digestive problems. AR 25, 419. Welsh reported that

---

[9] There were no records from mental health treatment. AR 19, 22.

although hydrotherapy and physical therapy was recommended by the rheumatology, she was reluctant to try new therapies. AR 369. The ALJ noted that Welsh denied taking any medication for her pain. AR 25. Welsh testified that she stopped taking medication in around March 2013 because they "weren't working anymore." AR 49-50. On her exertion questionnaire dated March 9, 2011, she reported she was not taking medication – just vitamins – because "nothing is available for my Chronic Fatigue illness." AR 222. Similarly, Welsh reported to the consultative examiners that she was not taking any medication. AR 324, 335, 404.

### 3. Activities of Daily Living

An ALJ may consider inconsistencies between a claimant's allegations and daily activities. *Bunnell*, 947 F.2d at 346. Welsh alleged in her exertion questionnaire, dated March 9, 2011, that she was effectively incapable of caring for herself and performing simple daily activities such as cleaning and preparing meals. AR 25, 220-22. She naps "[a]ll day long." AR 222. On the other hand, she told Dr. Rathana-Nakintara in August 2011 that she lives alone and does the shopping, cooking and cleaning, and performs self-care. AR 25, 336. She handles the family funds and pays the bills. AR 25, 336. She relies on family for transportation, but maintains an unrestricted driver's license and sometimes drives. AR 25, 46, 336. She later moved in with her in-law after she lost her home. AR 44. The ALJ properly discounted Welsh's credibility to the extent her daily activities were inconsistent with a "totally debilitating impairment." *Molina*, 674 F.3d at 1113 ("Even where [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

### 4. Conduct at the Hearing

An ALJ may consider personal observations at the hearing as part of the overall credibility evaluation. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ noted

that at the hearing, Welsh's thoughts did not seem to wander and all questions were answered alertly and appropriately. AR 25.

The ALJ's overall credibility finding is supported by substantial evidence. "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

### E.  RFC Determination

The RFC determination measures the claimant's capacity to engage in basic work activities. *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986). The RFC is a determination of "the most [an individual] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). It is an administrative finding, not a medical opinion. 20 C.F.R. § 404.1527(e)(2). The RFC takes into account both exertional limitations and non-exertional limitations. The RFC must contain "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. The ALJ must also explain how he or she resolved material inconsistencies or ambiguities in the record. *Id*. "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas*, 278 F.3d 947, 956-57 (citation omitted).

The ALJ assessed that Welsh can perform light work not involving lifting/carrying in excess of 10-20 pounds; sitting, standing and/or walking in excess of 6 hours per 8-hour workday; crawling or climbing of ramps/stairs; performing any climbing of ladders/ropes/scaffolds more than frequently; working at unprotected heights or around fire, water, moving machinery, or temperature extremes; or performing any work activities requiring constant depth perception vision. AR 23.

Welsh argues the RFC is not comprehensive based on her interpretation of the medical evidence and her subjective symptom testimony. Welsh essentially argues the

same contentions already addressed above. The ALJ properly evaluated the record evidence, and properly discounted Welsh's credibility and Ms. Pinter's assessment for the reasons discussed above. No acceptable medical source opined that Welsh had limitations greater than the RFC.

The ALJ did not err in the RFC determination.

### F. Step Five of the Sequential Analysis

At step five, the Commissioner bears the burden of demonstrating there is other work in significant numbers in the national economy the claimant can do. *Lounsburry*, 468 F.3d at 1114. If the Commissioner satisfies this burden, the claimant is not disabled and not entitled to disability benefits. If the Commissioner cannot meet this burden, the claimant is disabled and entitled to disability benefits. *Id.* "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.*

Welsh argues that the ALJ's hypothetical was inadequate because the ALJ improperly discounted her subjective complaints. As discussed above, the ALJ properly discounted Welsh's credibility. The ALJ's hypothetical to the VE contained all the limitations she found credible and supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (ALJ may rely on VE testimony given in response to a hypothetical question that contains all of the limitations the ALJ found credible and supported by substantial evidence). An ALJ is not required to include limitations that are not in his findings.[10] *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

---

[10] To the extent Welsh argues that the hypothetical should have included the limitations assessed by Ms. Pinter, her contention fails, as the ALJ properly rejected Ms. Pinter's opinion.

The ALJ's step five determination is supported by substantial evidence. The ALJ properly relied on the VE's testimony. The ALJ did not err.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: March 25, 2015

_____
ALICIA G. ROSENBERG
United States Magistrate Judge